MADDOX, Justice.
This case involves the propriety of a summary judgment for the defendant in a suit for breach of warranty and fraud. We reverse.
Charles Little, the president and sole stockholder of General Investment Corporation (hereinafter G.I.C.), acting in his capacity as president, ordered over $20,000 worth of roofing material from Texas Refinery Corporation in the early part of 1980, in four separate orders. G.I.C. paid for the first three orders by check at the time of purchase. The fourth order was to be paid for on a 120-day basis. G.I.C.’s account remained unpaid in August of 1980. Texas Refinery placed the account with a collection agency, which was authorized to hire an attorney for collection. In March of 1982, the unpaid balance on the account was $1,629.72. It was placed with a local attorney, who sued Little and G.I.C. in the district court on open account on March 17, 1982. On March 25, 1982, the attorney representing Little and G.I.C. wrote the attorney for Texas Refinery. This letter in pertinent part reads:
“Please find enclosed my Motion to Dismiss filed on behalf of the Defendant in the above styled cause. In that regard, I would like to advise that I represent General Investment Corporation here in Andalusia. I have recently spoken with Mr. Charles Little, President of the corporation with reference to the Complaint which was previously filed. Mr. Little has advised that the work provided by your client was most unsatisfactory with the result being that the roof which was installed with materials provided by your client still leaks and is in total disrepair. However, in order to overcome the necessity of trial, and the filing of a Counterclaim against you[r] client we would offer to pay one-half of the claim in satisfaction of the same. If the arrangement is acceptable, please advise at the earliest possible time.” (Emphasis added.)
On April 19, 1982, the attorney for G.I.C. again wrote the attorney for Texas Refinery. This letter in pertinent part reads:
“Please be advised that I have not heard from you with reference to my letter of March 25, 1982, dealing with the above styled cause. In that regard, you will find enclosed herein an Answer which we prepared on behalf of Mr. Charles Little. Also, I am now on hold as to whether to file a lawsuit against Texas Refinery Corporation here in Circuit Court for breach of warranty, and for defective installation of materials. Again, my client would be most happy to settle this matter by paying one-half of the claim in satisfaction of the same, or will proceed with a defense of your lawsuit and the filing of a breach of warranty claim in the Circuit Court of Covington County, Alabama. I will await your reply to this letter prior to filing our Counterclaim, and would hope that the matter can be settled without the need for undue litigation.”
No counterclaim was ever filed by Little or G.I.C. Thereafter, the attorneys orally agreed to settle the case. The compromise and settlement was for one-half the account balance and costs against Little and G.I.C. The attorney for G.I.C. prepared the stipulation for dismissal, with prejudice, as well as an order for dismissal, with prejudice. The dismissal and stipulation contained no language regarding a counterclaim. The attorney for Little then wrote a *1375 letter to the attorney for Texas Refinery. That letter reads in pertinent part:
“Please find enclosed my firm check in the amount of $847.86. This amount was the sum agreed upon between you and myself for settlement of the above styled cause. I further enclose a copy of the Stipulation for Dismissal as well as an Order for the same.”
On May 24, 1982, Texas Refinery’s attorney wrote the collection agency:
“I am pleased to advise that we have effected a settlement of the above claim upon your instructions to accept one-half of the amount demanded in the complaint, in consideration of the Defendant’s not bringing a countersuit. I have received payment from Defendant’s lawyer for $847.86 representing a reimbursement of court costs ($33.00) plus $814.86 for settlement of the claim....”
On April 6, 1983, which was subsequent to the dismissal of the lawsuit on account, Little, as president of G.I.C., wrote Texas Refinery complaining of problems with the roofing on “the Piggly Wiggly and Ses-soms Warehouse” buildings. The letter stated:
“[T]he roof material as applied was to last for a period of seven years, and I was assured by your employees that we would have no problem with the roof once the cement was applied as per your instructions.... [Y]our employees were available and assisted and directed the installation of the roofing material on the Piggly Wiggly Building and Sessoms warehouses here in Andalusia.
“We began to have problems with roof leakage during the later part of 1982, and your company was notified through my office with reference to these problems, and you were requested to assist me in correcting them because the material failed to meet those standards which you represented at the time of sale. However, even though these contacts were repeatedly made I received no reply or offer of assistance even though the roofs on all of the buildings where the cement was applied began to leak damaging everything contained inside. I believe that I have afforded you over these past several months an opportunity to be of assistance to me in overcoming these problems, but you have totally failed to assist me in any way with the result being that I must now replace the roof at a tremendous cost.
“As far as I am concerned you have breached your warranty and I will advise you that I intend to take legal action....”
On June 27, 1983, Little and G.I.C. filed suit against Texas Refinery on theories of breach of warranty and fraud and asked damages of $1,000,000. Texas Refinery answered and pleaded res judicata, collateral estoppel, estoppel by judgment, accord, and accord and satisfaction as defenses. G.I.C.’s original attorney, who had defended the suit on account, was deposed, and his deposition, together with the above-mentioned letters, was submitted by Texas Refinery in support of its motion for summary judgment. G.I.C. opposed the granting of summary judgment and filed an affidavit by Little in support of its opposition. This affidavit in pertinent part reads:
“The transactions involved between General Investment Corporation, a Corporation, and Texas Refinery Corporation, a Corporation, occurred between the period of January 14, 1980 and January 21, 1981, and during that period of time I was the President of General Investment Corporation, a Corporation....
“Between the period of January 14, 1980 and January 21, 1981, I personally purchased certain roofing material from Texas Refinery Corporation, a Corporation, for use in repairing the roofing on the Sessoms Warehouse buildings, located in Andalusia, Alabama, which I personally own, and I remitted to Texas Refinery Corporation, a Corporation, in excess of Eight Thousand Dollars ($8,000.00) for these materials.
“Between the period of January 14, 1980, and January 21, 1981, General Investment Corporation, a Corporation, purchased from Texas Refinery Corpora *1376 tion, a Corporation, certain roofing materials which were guaranteed to provide roof protection for seven years from invoice date, for use in the repair of the Piggly Wiggly building in Andalusia, Alabama, which was owned and is owned by General Investment Corporation, a Corporation, and General Investment Corporation, a Corporation, remitted to Texas Refinery Corporation, a Corporation, in excess of Eleven Thousand Dollars ($11,000.00) for the materials which were subsequently used in repair of the Piggly Wiggly building.
“On or about January, 1982, [sic] and approximately one year after installation of the building materials on the Sessoms warehouse, which I personally own, it became very obvious that the roof was still in disrepair, and that the materials did not provide the protection as warranted. I began to have complaints from my tenants with reference to leaking roofs on the Sessoms warehouses during the early part of 1982, and Texas Refinery Corporation, a Corporation, was informed that I would not pay the balance remaining on their statement until such time as the problems with the Sessoms warehouses were rectified.
“Thereafter, on the 22nd day of March, 1982, Texas Refinery Corporation, a Corporation, sued me individually and doing business as General Investments on a verified statement of account. In an effort to avoid litigation, I individually agreed to settle the account for ¾⅞ of the amount claimed and the case against me individually, and d/b/a General Investments, was dismissed on the 18th day of May, 1982.
“During the winter months of November and December of 1982, I began to receive complaints from the tenant which occupied the Piggly Wiggly building which is owned by General Investment Corporation, a Corporation, located here in Andalusia, Alabama. The roof on the building where the Texas Refinery products were installed had begun to leak, and was damaging the interior of the building as well as the tenant’s products contained inside the building.
“General Investment Corporation, a Corporation, attempted repair by placing another coating of the Texas Refinery Corporation products on the areas of the building which were leaking. However, the problem continued to persist, and during the early part of 1983, it became apparent that more drastic measures would have to be taken by General Investment Corporation, a Corporation, or the corporation would lose a valued tenant due to the leakage and problems caused by the roof.
“On April 6, 1983, I as President of General Investment Corporation, forwarded a letter to Texas Refinery Corporation, a Corporation, with reference to the sale of Mighty Plate Plastic Cement to General Investment Corporation....
“I informed Texas Refinery Corporation that General Investment Corporation began to have roof leakage problems during the latter part of 1982, and that although requested to assist in correcting these problems, that I had received no reply or offer of assistance from Texas Refinery Corporation. I further informed Texas Refinery Corporation, that it had breached its warranty to General Investment Corporation, and that having afforded Texas Refinery Corporation an opportunity for several months to be of assistance in overcoming these problems, that General Investment Corporation intended to take legal action due to Texas Refinery Corporation ignoring its obligation to assist General Investment Corporation in case of problems with the products which were purchased.
“Subsequent to the letter of April 6, 1983, General Investment Corporation during the spring of 1983, was required to replace completely the roof on the Piggly Wiggly building at a substantial cost, and in excess of Thirty Thousand Dollars ($30,000.00).
“On June 21, 1983, the attorney representing General Investment Corporation, a Corporation, forwarded a letter ... to Texas Refinery Corporation, again in *1377 forming Texas Refinery Corporation of the numerous problems which arose with reference to the sale of their product, and placed Texas Refinery Corporation on notice of pending litigation.”
G.I.C. frames the issues before the Court thusly: Whether an accord and satisfaction can be maintained as a defense in the absence of a bona fide pre-existing dispute, whether a summary judgment finding an accord and satisfaction as a matter of law is appropriate, when the facts establish a dispute between the parties as to the issue of accord and satisfaction, and finally whether the trial court committed error in granting summary judgment in ruling there was no genuine issue of material fact and the defendant was entitled to a judgment as a matter of law.
Texas Refinery frames the issue as whether the doctrines of res judicata, es-toppel by judgment, and collateral estoppel are available to uphold the trial court’s judgment in light of the fact that the trial court did not state upon what grounds it based the summary judgment order.
We believe the issue is best stated as whether there was a compromise and settlement between the parties on the district court case which was intended to encompass the later claim filed by G.I.C. in circuit court for fraud and breach of warranty. The general rule is succinctly set out in 15A C.J.S. Compromise and Settlement § 25 (1967):
“Ordinarily a valid compromise agreement concludes defenses and counterclaims with respect to the original claim or cause of action. A party to a compromise is afterward estopped to set up matter constituting a setoff or counterclaim in existence when the compromise was made, unless such matter was not intended to be settled.” (Emphasis added.)
We have recognized this rule in the past.
“ ‘The law favors the amicable settlement of controversies, and it is the duty of courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims. The nature or extent of the rights of each should not be too nicely scrutinized. Courts should and do, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties.... Because they promote peace, voluntary settlements of differences between parties having legal capacity to contract in respect of their rights, where all have the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights and where there are no fraud, misrepresentations, concealments, or other misleading incidents, must stand and be enforced if intended by the parties to be final, notwithstanding the settlement made might not be that which the court would have decreed if the controversy had been brought before it for decision. Such agreements are binding without regard to which party gets the best of the bargain or whether all the gain is in fact on one side and all the sacrifice on the other.’ 11 Am.Jur., Compromise and Settlement, § 4.”
Tatum v. Carter, 270 Ala. 445, 448, 119 So.2d 223 (1960).
G.I.C. contends that there was no “meeting of the minds” of the parties on just what the compromise and settlement included. G.I.C. states that roofing materials were purchased from Texas Refinery to reroof two buildings located in Andalusia, and that the compromise and settlement agreement only involved one of those buildings. G.I.C. argues that on March 22, 1982, when Texas Refinery sued Charles Little, individually, and d/b/a General Investment, on a verified statement of account, and on March 25, 1982, when counsel for Charles Little forwarded a letter to Mark Vaughn, Attorney for Texas Refinery, accompanied by a motion to dismiss the complaint on the verified account, that “there were no existing problems with the roofing on the Piggly Wiggly building owned by General Investment, but the Sessions [sic] Warehouses owned by Mr. Little remained in a state of total disrepair.” In *1378 short, G.I.C. contends that the letter of March 25, 1982, refers only to the case of Texas Refinery Corporation v. Charles Little, case # DV-82-49, and did not deal with the problems with the Piggly Wiggly roof because those problems had not yet surfaced. G.I.C. notes in its brief the March 25, 1982, letter from Charles Little’s counsel, which reads, in part, as follows:
“Mr. Little has advised that the work provided by your client was most unsatisfactory with the result being that the roof which was installed with material provided by your client still leaks and is in total disrepair.”
G.I.C. essentially says, by this argument, that the intent was to settle the suit on account as to one building only, and that the compromise settlement was not intended to preclude a suit for breach of warranty and fraud concerning a roof on a second building.
Intent is a question of fact that is ordinarily to be determined by a jury. In this case there is a factual dispute, as demonstrated by the affidavits, letters, and deposition offered by the parties, as to what the parties intended the compromise and settlement agreement to encompass. In summary judgment cases, the standard of review is clear. In order to render a summary judgment, the moving party must show “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Ala.R.Civ.P. 56(c), Houston v. McClure, 425 So.2d 1114 (Ala.1983). Here, there was a dispute of material fact, whether the parties intended the compromise and settlement to bar a later suit by G.I.C., and there was some evidence in support of G.I. C.’s theory that it did not intend to preclude this particular suit when it entered into the settlement agreement.
For the foregoing reasons, we must reverse the judgment of the trial court.
REVERSED AND REMANDED.
JONES, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., concurs specially.